UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
GERARD NAPOLITANO,

                Petitioner,                    <u>Memorandum & Order</u>
                                                      04-CV-5109 (NGG)

      v.

MICHAEL ZENK, Warden, et. al.,

                Respondents
----------------------------------------------------------X
GARAUFIS, United States District Judge.

Gerard Napolitano petitions pro se pursuant to 28 U.S.C. § 2241, contending principally that the Bureau of Prisons ("BOP") erroneously calculated the amount of federal "good time credit" to which he is entitled under 18 U.S.C. § 3624(b).[1] Specifically, Napolitano argues that based on his 24 month sentence, he should be able to accrue 108 days of good time credit. The BOP, however, applying a different construction of the good time credit statute, contends that Napolitano is due only 94 days of good `time credit. Napolitano also lodges an equal protection claim against the BOP, contending that it is engaging in disparate treatment of inmates by prospectively awarding good time credit for the first 366 days served only for inmates serving a term of imprisonment of thirteen months or less.

For the reasons that follow, Napolitano's petition is denied.

**I.    Background**

Napolitano was convicted in the Southern District of New York for conspiracy to commit

---

[1] The reasoning in this opinion is identical to that in another opinion issued by the court on this day, <u>Pollard v. Zenk</u>, 04-CV-5103. In both cases, the petitioners filed virtually identical form complaints that differed only with respect to details of their convictions and sentences.

1

wire and mail fraud and for making false statements, in violation of 18 U.S.C. §§ 371 and 1001, and sentenced to 24 months of imprisonment. Based upon Napolitano's 24-month sentence and the one day of jail time accrued before sentencing, the BOP calculates that his full term of imprisonment should expire on September 6, 2006. (See Sentence Monitoring Computation Data and Justin Lilien Declaration, Exs. 1 and 2 to Gov't Memorandum.) The BOP has further calculated that, pursuant to the good time credit statute, 18 U.S.C. § 3624(b), Napolitano should, absent bad behavior, be entitled to 94 days of good time credit against his sentence. This calculation is based upon actual time served by Napolitano. (Id.)

Napolitano, by contrast, favors an approach to calculating good time credit based not on time actually served, but upon the term of imprisonment imposed. That is, for each year of imprisonment, Napolitano contends that he is due 54 days of good time credit under the language of § 3624(b). Based upon this method, Napolitano contends that he is actually due 108 days of good time credit. In the event that the court is not persuaded that the language of § 3624(b) unambiguously demands the result he favors, Napolitano urges the court to apply the rule of lenity to reach the same outcome.

Napolitano also argues that by using a different method in calculating sentences for inmates serving 13 months or less than that used for inmates serving over 13 months, the BOP is violating the Equal Protection Clause.

## II. Discussion

### A. *Exhaustion of Administrative Remedies*

The government first contends that Napolitano's petition should be dismissed because he has failed to exhaust his available administrative remedies by seeking BOP review under its

four-step Administrative Remedy Procedure. See 28 C.F.R. Part 542. Napolitano does not dispute that he has failed to pursue administrative remedies before filing this petition, but he argues that, given the BOP's firmly held position on this issue, administrative review would have been futile and should, therefore, be excused.

Although "federal prisoners must exhaust their administrative remedies prior to filing a petition for habeas relief, Carmona v. U.S. Bureau of Prisons, 243 F.3d 629, 634 (2d Cir. 2001), the requirement is prudential, not statutory. Zucker v. Menifee, No. 03 Civ. 10077, 2004 WL 102779, at *4 (S.D.N.Y. Jan. 21, 2004). Moreover, the "[c]ommon law (or 'judicial') exhaustion doctrine . . . recognizes judicial discretion to employ a broad array of exceptions that allow a plaintiff to bring his case in district court despite his abandonment of the administrative review process." Beharry v. Ashcroft, 329 F.3d 51, 58 (2d Cir. 2003). The futility of pursuing administrative remedies, the notion advanced by Napolitano, is one of the commonly recognized exceptions. See, e.g., Guitard v. U.S. Sec'y of Navy, 967 F.2d 737, 741 (2d Cir. 1992) ("Exhaustion of administrative remedies may not be required when . . . administrative appeal would be 'futile' . . ."); Pimentel v. Gonzalez, --- F.Supp.2d ---, No. 05 Civ. 1199, 2005 WL 1023479, at *5 (E.D.N.Y. May 3, 2005) (Garaufis, J.) (excusing failure to exhaust BOP's administrative remedies where such "challenge would invariably be denied" and was, therefore, "futile"); Pinto v. Menifee, No. 04 Civ. 5839, 2004 WL 3019760, at *3 (S.D.N.Y. Dec. 29, 2004) ("Before seeking federal habeas review of an adverse administrative decision--such as a sentence designation by the BOP--a petitioner is required to exhaust all agency remedies, unless an administrative appeal would be futile.").

Here, there can be little doubt that had Napolitano pursued the administrative remedies

available to him through the BOP, it would have been an effort made in vain. The BOP's interpretation of the statute in question is laid out in 28 C.F.R. § 523.20 and clearly indicates its position that good time credit is calculated based on time actually served. Not only is this the stated policy of the BOP, but as could be expected, it has also been consistently applied by the agency in practice. One only need take note of the slew of recent cases brought by federal inmates across the country challenging the BOP's application of § 3624(b) to conclude that Napolitano accurately gauged that pursuing administrative remedies would have been a wasted effort. See, e.g., Tilford v. U.S. Bureau of Prisons, No. Civ.A. H-05-1590, 2005 WL 1155104 (S.D. Tex. May 9, 2005) (slip copy); Birmingham v. Scibana, No. 04-C-983-C, 2005 WL 497754 (W.D. Wis. Feb 18, 2005) (slip copy); Gonzalez v. Ashcroft, No. 04-Civ-1712, 2005 WL 309772 (D. Or. Feb. 7, 2005) (slip copy); Williams v. DeWalt, 351 F.Supp.2d 412 (D. Md. 2004).

An additional factor militating in favor of excusing exhaustion here is that the administrative process would be unable to deliver its traditionally recognized benefits of advancing the "interests of judicial economy and accuracy." Carmona, 243 F.3d at 634. Since there are no disputed issues of fact in this case, only a question of statutory meaning, administrative review would not serve to "develop the factual record at the agency level at a time when the disputed events are still relatively fresh in witnesses' minds." Id. More pragmatically, because this court has already initiated a review of Napolitano's petition, dismissing it now only to have it refiled later would necessitate duplication of the court's, as well as the parties', efforts. Such an unnecessary expenditure of resources seems particularly imprudent in a situation such as this where the petition so clearly lacks merit and can be addressed by the court with a minimum of effort.

4

For these reasons, the court excuses Napolitano's failure to exhaust his administrative remedies and turns to the merits of his petition.

B.     *The BOP's Interpretation of § 3624(b)*

This court has previously considered and rejected the exact challenge that Napolitano now brings against the BOP's method of calculating good time credit. In Sash v. Zenk, 344 F.Supp.2d 376, 383 (E.D.N.Y. 2004), I wrote: "Having decided that the language of § 3624(b) is ambiguous, that the legislative history of the bill is inconclusive with respect to the parties' dispute, and that Chevron[2] deference is appropriate here because the rule of lenity does not apply, this court easily reaches the conclusion that the BOP's interpretation of the statute is reasonable." Numerous other courts within this Circuit have considered this challenge and have also reached the conclusion that the BOP's method of good time credit is reasonable. See Perez v. Zenk, No. 04 Civ. 5069, 2005 WL 990696, at * 3 (E.D.N.Y. Apr. 11, 2005) (Amon, J.) (slip copy); Tash v. Zenk, No. 04 Civ. 4613, 2005 WL 503938, at *4 (E.D.N.Y. Feb. 14, 2005) (slip copy) (Gleeson, J.); Loeffler v. Bureau of Prisons, No. 04 Civ. 4627, 2004 WL 2417805, at *6 (S.D.N.Y. Oct. 29, 2004); Pasciuti v. Drew, No. 9:04-CV-043, 2004 WL 1247813, at *6 (N.D.N.Y. Jun. 2, 2004).

As Napolitano's claim differs in no significant manner from the challenge I reviewed in Sash, it is unnecessary to explicate the reasons that this claim must be denied. Accordingly, I once again uphold the BOP's method of computing good time credit and reject Napolitano's challenge.

---

[2] Chevron U.S.A. Inc. v. Natural Resources Defense Council, 467 U.S. 837 (1984).

### C. Equal Protection Claim

Napolitano contends that he is being denied equal protection under the law by the BOP's refusal to deduct good time credit from the initial 365 days he served, as he claims the BOP does for inmates sentenced to a term of 366 days or thirteen months. (Petition at 5.) Based on this view, Napolitano argues that the BOP is violating § 3624(b) to his detriment by awarding credit to differently situated inmates. This argument is without merit.

Contrary to Napolitano's assertion, the BOP does in fact deduct good time credit for inmates such as Napolitano who are serving sentences in excess of 13 months but, pursuant to § 3624(b), it does so after 365 days have been served. Thus, there is no basis for Napolitano's contention that he is being deprived of his earned good time credit. For inmates sentenced to a term of 13 months and under, applying good time credit after 365 days have been served would render the credit meaningless because it would inevitably exceed the remaining period of incarceration. Because of this circumstance, it becomes necessary for the BOP to create a Projected Release Date of less than 12 months. And while this approach does necessitate that good time credit for some inmates be applied before a full year of imprisonment, this distinction between groups of inmates does not rise to constitutional dimensions.

"It is by now well-established that the constitutional guarantee of equal protection does not forbid all classifications, but rather 'keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike.'" Nicholas v. Tucker, 114 F.3d 17, 20 (2d Cir. 1997) (quoting Nordlinger v. Hahn, 505 U.S. 1, 10 (1992)). Thus, courts "will uphold a law that neither burdens a fundamental right nor targets a suspect class so long as the legislative classification bears a rational relation to some independent and legitimate legislative end."

Romer v. Evans, 517 U.S. 620, 621 (1996). In this case, neither a suspect class nor a fundamental right is involved. Prisoners are not a suspect class demanding a higher level of scrutiny than rational basis review. Nicholas, 114 F.3d at 20. The good time statute also does not affect any fundamental right guaranteed by the Constitution because it "merely authorizes the BOP to offer prisoners the benefit of a reduced sentence in exchange for good behavior." See Perez, 2005 WL 990696, at *4. Accordingly, the BOP's policy of calculating good time credit is subject only to rational basis review.

To survive rational basis review, governmental action must have "no more than a 'reasonable fit' between governmental purpose . . . and the means chosen to advance that purpose." Reno v. Flores, 507 U.S. 292, 305 (1993). Further, the policy adopted by the government need not be the most narrowly tailored means of advancing the goal. See id. Here, the BOP's policy of calculating good time credit is a reasonable approach to the governmental purpose of inducing inmates to behave well. In the absence of its policy allowing credit to be applied prior to the conclusion of a year's imprisonment for inmates serving 13 months or less, the BOP would have no equally effective means of creating incentives for good behavior for inmates sentenced to brief terms of incarceration. Further, Napolitano has not demonstrated that the BOP's policy results in unfair treatment. For each group of prisoners, those serving more than 13 months and those serving less, good time credit is still calculated in the same manner. For each group, good time conduct credit is deducted from the inmate's Full Term Date of their sentence resulting in a release date in advance of the Full Term Date. (See Gov't Memorandum at 20-21.) Accordingly, Napolitano's equal protection claim is denied.

### III. Conclusion

For the reasons discussed above, Napolitano's petition for a writ of habeas corpus is DENIED. The Clerk of Court is directed to close the case.

SO ORDERED.

Dated: May 27, 2005                                          /s/ Nicholas Garaufis
    Brooklyn, NY                                          NICHOLAS G. GARAUFIS
                                                             United States District Judge